|  |  |  |
|---|---|---|
| JAIME PACHECO-FIGUEROA | : | |
| *Plaintiff,* | : | Civil Action |
| v. | : | No. 22- |
| UNITED STATES OF AMERICA | : | |
| *Defendant* | : | |

## COMPLAINT

### I.   PRELIMINARY STATEMENT

1.   Plaintiff Jaime Pacheco-Figueroa, by and through his attorneys, brings this claim to address the gross negligence of medical practitioners and other employees of the Federal Bureau of Prisons ("BOP") in the Federal Detention Center ("FDC") in Philadelphia. The failure to provide Mr. Pacheco-Figueroa with timely and appropriate medical care caused him pain, suffering, and ultimately permanent physical damage.

2.   Employees of defendant United States failed to adequately treat Mr. Pacheco-Figueroa for an August 17, 2019 injury to his right arm that he sustained after a fall. After several months of pain and unanswered requests for treatment, Mr. Pacheco-Figueroa was diagnosed with a full-thickness tear of the triceps tendon and a complete tear of the radial collateral ligament in his arm. Medical professionals at the FDC significantly and unnecessarily delayed his care so that he did not receive a necessary surgical repair of his arm until almost six months after he was injured.

3. This unnecessary delay exacerbated the severity of Mr. Pacheco-Figueroa's condition, complicated his eventual treatment, and hindered his ability to fully recover. Additionally, the inability or unwillingness of FDC employees to provide Mr. Pacheco-Figueroa with adequate physical therapy further disrupted his care and long-term recovery.

4. Mr. Pacheco-Figueroa brings this action against defendant United States of America under the Federal Tort Claims Act seeking compensation for his past and future physical and emotional pain and suffering and future financial losses.

## II. JURISDICTION & VENUE

5. Plaintiff brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.

6. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, 1346(b).

7. On July 21, 2021, Mr. Pacheco-Figueroa submitted a timely Administrative Tort Claim to the BOP. As of January 21, 2022, the BOP did not respond to Mr. Pacheco-Figueroa's Administrative Tort Claim and therefore constructively denied the claim.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b) because the events and omissions giving rise to this action occurred in Philadelphia, Pennsylvania, within the Eastern District of Pennsylvania.

## III. PARTIES

9. Plaintiff Jaime Pacheco-Figueroa is an adult individual currently incarcerated at the Federal Correctional Institution in Florence, Colorado. He was previously incarcerated at the Federal Detention Center in Philadelphia, Pennsylvania at all times relevant to this Complaint.

10. Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

11.     At all times relevant to this Complaint, all medical and corrections personnel mentioned below were employees of BOP and Defendant United States of America and were acting within the course and scope of their employment.

### IV.     FACTS

12.     On August 17, 2019, while incarcerated at the FDC in Philadelphia, a facility operated and staffed by the BOP, Mr. Pacheco-Figueroa tripped, fell, and injured his right arm.

13.     On August 19, 2019, Mr. Pacheco-Figueroa was seen by FDC nurse practitioner Christine Nelson, presenting with upper arm and elbow swelling, throbbing pain and a triceps tremor.

14.     An August 22, 2019 x-ray revealed soft tissue swelling in Mr. Pacheco-Figueroa's upper arm and indicated a triceps tendon injury.

15.     A triceps tendon is a strong band of tissue that attaches the triceps, the muscle on the backside of the upper arm, with the elbow bone. The triceps tendon is essential to one's ability to straighten one's arm at the elbow.[1] In the case of a triceps tendon rupture, the triceps muscle cannot pull on the bone, causing extension weakness.[2]

16.     Reasonable medical practitioners understand that surgical repairs of triceps tendon ruptures should be completed within four weeks of the injury.[3]

---

[1] Tufts Medical Center, *Triceps Tendon Injury*, https://hhma.org/healthadvisor/aha-tricepst-sma/ (last visited October 12, 2022).

[2] Rothman Orthopaedics, *Triceps Tendon Rupture*, https://rothmanortho.com/specialties/conditions/triceps-tendon-rupture (last visited October 12, 2022).

[3] *Id; See also* Mayo Clinic Sports Medicine, *Biceps/Triceps tendon injuries*, https://sportsmedicine.mayoclinic.org/condition/biceps-triceps-tendon-injuries/ (last visited October 12, 2022).

17.     Lack of timely treatment for a complete triceps tendon tear can result in negative outcomes, including significant disability, weakness, pain, and deformity.[4]

18.     After reviewing the x-ray results showing a triceps tendon injury, on August 23, 2019, FDC physician Dr. Raeph Laughingwell ordered an MRI of Mr. Pacheco-Figueroa's right arm for further evaluation and directed that it be completed by August 30, 2019.

19.     While Mr. Pacheco-Figueroa waited for treatment, his right arm was visibly purple with bruising from his shoulder to his elbow, causing him pain and anxiety.

20.     A large lump formed around his right elbow, noticeable by other incarcerated people and prison staff.

21.     BOP employees did not transport Mr. Pacheco-Figueroa to an offsite appointment for an MRI until November 6, 2019, more than two months after it was ordered.

22.     Reasonable medical practitioners know that timely treatment and diagnosis is essential to preventing long term injury and that effective diagnostic scans, such as an MRI, must be performed as soon as possible.

23.     Despite this knowledge, FDC's medical staff took no action to ensure that Mr. Pacheco-Figueroa received a timely MRI, as they knew he required following his August 22, 2019 x-ray results.

24.     The MRI, when it was finally performed, revealed a near full-thickness tear of Mr. Pacheco-Figueroa's triceps tendon and a chronic complete tear of his radial collateral ligament.

25.     The radial collateral ligament is part of the lateral collateral ligament complex, which is a band of tissues that connects the humerus, the bone of the upper arm, with the radius,

---

[4] *Id.*

the bone of the forearm.[5] When this ligament is torn, it can lead to pain, instability, and a disruption of the arm's normal functioning.[6]

26. Dr. Laughingwell reviewed the MRI results and determined that Mr. Pacheco-Figueroa required a consultation with an orthopedic surgeon. He ordered the scheduling of an appointment and directed that the appointment take place by November 20, 2019.

27. On November 19, 2019, after Mr. Pacheco-Figueroa submitted a sick call request for treatment of his arm, Nurse Practitioner R. Kistler saw Mr. Pacheco-Figueroa on his housing unit and told him he was scheduled to see a surgeon.

28. Mr. Pacheco-Figueroa did not receive a consultation with an orthopedic surgeon until December 5, 2019—more than two weeks after the date directed by Dr. Laughingwell and almost a month after his MRI was completed.

29. Reasonable medical practitioners are aware that timely consultation with appropriate specialists is necessary to create an adequate treatment plan and prevent the potential consequences of an untreated injury.

30. During his December 5, 2019 consultation with an offsite orthopedic surgeon, Mr. Pacheco-Figueroa was diagnosed with a traumatic rupture of his right collateral ligament and surgery was recommended to repair his triceps and additional ligaments.

31. At that time, the consulting physician from Rothman Orthopedics noted that, "the plan will be for a triceps repair with possible allograft and a lateral ulnar collateral ligament

---

[5] Megan Conti Mica, et. al. *Lateral collateral ligament injuries of the elbow*. 12 European Federation of National Associations of Orthopaedics and Traumatology Open Reviews 461 (2016).
[6] John Hopkins Medicine, *Ulnar Collateral Ligament Injuries of the Elbow*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/ulnar-collateral-ligament-ucl-injuries-of-the-elbow (last visited March 15, 2022).

repair versus reconstruction, although I think it is very unlikely that the lateral collateral ligament would be able to be repaired at this point in time."

32. The orthopedic surgeon informed Mr. Pacheco-Figueroa that he needed surgery as soon as possible because his injury had started to heal improperly.

33. Dr. Laughingwell reviewed the report from the orthopedic consultation and directed that Mr. Pacheco-Figueroa be transported for surgery by December 16, 2019.

34. Delayed repair of a triceps tendon can require a more difficult and demanding surgery and lead to inferior results, "therefore, prompt recognition and repair leads to superior outcomes."[7]

35. Reasonable medical practitioners are aware that tendon injuries must be promptly repaired and physicians without specialized knowledge know that it is essential to defer to treatment plans made by specialists who have expertise in a particular practice area.

36. Mr. Pacheco-Figueroa's surgery was not performed until February 3, 2020, two months after the orthopedic surgery specialist recommended surgery and five and a half months after his injury.

37. Throughout the two-month period that Mr. Pacheco-Figueroa was waiting for surgery after it was recommended by the specialist at Rothman Orthopedics, FDC medical staff failed to take any action to ensure that the surgery would be conducted in a timely fashion.

38. After the surgery, Mr. Pacheco-Figueroa's surgeon explained to him that the surgical repair had been abnormally extensive because the triceps muscle had retracted

---

[7] Cezary Kocialkowski, et. al. *Triceps tendon rupture: repair and rehabilitation*. 10 Shoulder & Elbow 62 (2017).

significantly due to the delay in care, and that he had never before needed to use so much muscle from a cadaver to reconstruct a triceps.

39. Four days after his surgery, Mr. Pacheco-Figueroa had to request pain medication from BOP medical providers because he did not receive proper post-operative pain management and he was in extreme pain.

40. Further, he did not receive any physical therapy until he requested it, after which he was taken to just two sessions, months after his surgery.

41. As a result of the delays in care, the extent of the surgery he ultimately received, and the lack of sufficient post-surgery physical therapy, Mr. Pacheco-Figueroa, who is right-handed, has experienced lasting weakness, physical limitations, and pain in his right arm.

42. He cannot perform simple tasks that include pushing, picking something up, or even getting out of bed without experiencing pain in his right arm. He has been unable to participate in more physically challenging jobs within the prison that require two arms, including pushing food or laundry carts, or lifting heavy objects.

43. While awaiting care, Mr. Pacheco-Figueroa was in significant emotional distress brought on by the uncertainty, frustration, and fear of being injured without treatment and concern that long-term damage was developing.

44. As the months without surgery continued. Mr. Pacheco-Figueroa experienced trouble sleeping due to anxiety and the physical pain in his arm, as well as stress manifesting in painful headaches.

45. His anxiety was exacerbated by the lack of communication and dismissiveness of BOP employees, including a correctional officer who informed Mr. Pacheco-Figueroa that,

unless his injury was so severe that a bone was protruding from his body, he was considered okay, and his treatment was not a priority.

46.     As a result of the actions and inactions of BOP employees as described above, Mr. Pacheco-Figueroa has suffered substantial damages including physical pain and suffering, emotional trauma, loss of the enjoyment of life and financial damages, some or all of which may be permanent.

## V. CAUSE OF ACTION

### Count I
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligence

47.     The BOP correctional and medical employees, including Dr. Raeph Laughingwell and NP Kistler, owed a duty to plaintiff, breached their duty to plaintiff, and, as such, were direct and proximate causes and substantial factors in bringing about plaintiff's damages outlined above.

48.     The actions and inactions of the BOP correctional and medical employees, including those referenced above, constitute the tort of negligence under the law of Pennsylvania.

49.     Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

### Count II
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligent Infliction of Emotional Distress

50.     The BOP correctional and medical employees referenced above, including Dr. Raeph Laughingwell and NP Kistler owed a duty to plaintiff, breached that duty, and caused

8

plaintiff to suffer severe emotional distress, which has manifested itself in physical symptoms as described above, and which was the direct and proximate result of defendants' breach of duty.

51. The actions and inactions of the BOP correctional and medical employees, including those referenced above, constitute the tort of negligent infliction of emotional distress under the laws of the Commonwealth of Pennsylvania.

52. Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

**Count III**
**Plaintiff v. Defendant United States of America**
**Federal Tort Claims Act – Intentional Infliction of Emotional Distress**

53. The conduct of the BOP correctional and medical employees referenced above, including Dr. Raeph Laughingwell, was outrageous and extreme. These employees acted intentionally or in deliberate disregard of Mr. Pacheco-Figueroa's emotional distress; and, as a direct and proximate result, he suffered severe emotional distress which manifests itself in physical symptoms, including extreme pain and discomfort.

54. The actions and inactions of the BOP correctional and medical employees, including those referenced above, constitute the tort of intentional infliction of emotional distress under the laws of the Commonwealth of Pennsylvania.

55. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions

**Wherefore**, plaintiff Jamie Pacheco-Figueroa respectfully requests:

A.      Compensatory damages;

B.      Reasonable attorneys' fees and costs;

C.      Such other and further relief deemed just and appropriate.

/s/ Grace Harris
Grace Harris
I.D. No. 328968
gharris@krlawphila.com

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
I.D. No. 88227
jfeinberg@krlawphila.com

KAIRYS, RUDOVSKY, MESSING, FEINBERG
 & LIN
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
(215) 925-5365 (fax)